IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEMETRIES L. STURGIS, #345-565 | * | |
| v | * | Civil Action No. PJM-12-1162 |
| BOBBY SHEARIN, et al. | * | |
| Respondents | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending is Demetries L. Sturgis' ("Sturgis") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition. After considering the pleadings, exhibits, and applicable law, the Court determines a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts"; *see also Fisher v. Lee,* 215 F.3d 438, 455 (4th Cir. 2000) (stating there is no entitlement to a hearing under 28 U.S.C. § 2254(e)(2)).

**BACKGROUND**

Sturgis is challenging convictions from 2007 in the Circuit Court for Baltimore City, Maryland, for first-degree murder and first-degree assault. On June 25, 2007, a jury found Sturgis guilty of the first-degree and second-degree murder of Rasheed Stevenson and the first-degree and second-degree assault of Larry Reed. Petition, ECF 1 p. 2. On August 14, 2007, the Court sentenced Sturgis to life imprisonment on the first-degree murder conviction, plus a concurrent twenty-five years for first-degree assault.

A. Facts

The Court of Special Appeals summarized the facts at trial in pertinent part:

Mr. [Kalib] Moye, a witness for the State testified that on July 18, 2006, his "home boy," Rasheed Stevenson, a.k.a. "Rock," was killed by "Meechie," i.e. appellant. Mr. Moye testified that appellant was a gang member. According to Mr. Moye, sometime around 2:00 a.m., a '[c]ouple of us," including himself and "Rock," were on Whitridge [Avenue] '[h]ustling," or [s]elling crack" when [Strugis] '[c]ame around there fussing with my home boy Rock, told him he weren't no Blood, Rock started laughing at him. [Sturgis] said he'd be back. He came around there, came back, stabbed my man in his neck, then I ran." Mr. Moye testified that [Sturgis] was with "Vonnie," and that Mr. Stevenson was with Mr. Moye and Larry Reed. When the altercation took place, Vonnie punched Mr. Stevenson and then [t]hey was fightin'." While they were fighting, appellant was '[s]tabbing." Mr. Moye testified that he did not see a knife, but that he saw "the blood shoot out" of Mr. Stevenson's neck. He did not see [Sturgis] do anything to Mr. Reed because he "already had ran by then."

Mr. Moye testified that when he spoke to the police detectives with regard to the incident, the detective showed him a photographic array, and asked him if he "recognize[d] anybody on there." At first, Mr. Moye told the detectives that he did not recognize anyone because he was scared that "[s]omething might happen to [his] people." After "[p]robably like 10, 20 minutes," however, Mr. Moye pointed to "Meechie" in the array. Mr. Moye testified that the detectives did not threaten him, and did not tell him that the person who committed the crime was in the array. Mr. Moye testified that he picked appellant's picture "[b]ecause he the one that did it."

On cross-examination Mr. Moye testified that "Meechie" "started fussing with Rock" telling him that "he wasn't no Blood." "Rock" was laughing and "Meechie" left. When "Meechie" returned "like 20-30 minutes" later, he "[w]alked up, straight stabbed Rock in the neck, boom, blood gushed out," and Mr. Moye ran. Mr. Moye testified that the incident took place "right in front" of him. He stated that he did not see a knife and that he did not actually see anybody stab Mr. Stevenson "[b]ecause it was real dark, you really couldn't see what it was, [but] you could see the blood shoot out." Mr. Moye also saw "Vonnie" walk up and punch Mr. Reed in the face before he ran.

On redirect, Mr. Moye testified that although he did not actually see a knife, he did see "Meechie" strike Mr. Stevenson on his neck.

2

Shantey Cash also testified for the State. She testified that on July 18, 2006, she was in the 400 block of Whitridge when Mr. Stevenson or "Rock," and Mr. Reed, or "BooBoo," were talking to a girl on a cell phone. The girl, Courtney, then put [Sturgis] on the phone and "Rock" and [Sturgis] started "fussing." She stated that she could hear [Sturgis'] voice and recognized it as him. Sometime after the argument on the phone, [Sturgis] and "Vonnie" came to the location where Ms. Cash, Rock, BooBoo, Mr. Moye, and two others were. When they got there, "Meechie" and "Vonnie" then left, but then "came back round there and [Sturgis] stabbed Rock and the boy Vonnie was fighting BooBoo and then Meechie started stabbing BooBoo up." Ms. Cash agreed that "Meechie" stabbed both Mr. Reed and Mr. Stevenson. Ms. Cash never saw a knife, but she "seen [Sturgis] stab Rock in his neck, that's the only place [she] seen him stab him at. And [she] seen him, BooBoo was on the ground and [she] seen [Sturgis] just stabbing BooBoo up." After the altercation she saw "blood just squirting out" of Mr. Stevenson's neck.

Ms. Cash testified that the first time she spoke to police she told them that she had just "come around the corner" after the incident occurred and that she had not seen anything. She stated that she did not tell them the truth at first because she was afraid that if she did, "something would probably happen to [her] or [her] family or something like that." Ms. Cash said that she decided to tell the truth the next time she spoke to the detectives because she "felt guilty" and that she "knew what happened."

Ms. Cash testified that when she spoke to detectives the second time, they showed her a photographic array. She stated the detectives "slid [the array] on the table, and asked [her] did [she] recognize anybody there who did the stabbing." Ms. Cash testified that the detectives did not tell her that the person who they were looking for was in the array, and did not tell her to pick "Meechie." Ms. Cash stated that she picked out "Meechie" and wrote "he stabbed two of my best friends and killed one of them.

On cross-examination, Ms. Cash testified that when the detectives showed her the array, they did not mention the name "Meechie" to her, and that she was the one who told them that "Meechie" was involved.

ECF No. 8, Ex. 3 pp. 13-16.[1] Larry Reed, the surviving victim, was called as a witness by the state. Trial Transcript, Ex. 13 p. 16. He testified that prior to the stabbing he had been "drinking

---

[1] All exhibits referenced were filed by Respondents.

Hennessey" and "doing ecstasy" which dulled his mind so that he "don't remember nothing" about the incident. *Id*. at 18-20.

### B. Procedural History

Sturgis filed a direct appeal to the Court of Special Appeals of Maryland, raising five claims of error:

1. The trial court erred in permitting the state to argue facts not in evidence during closing argument;

2. The trial court erred in refusing to ask one of the defense's proposed voir dire questions;

3. The trial court abused its discretion in admitting a blow-up of an autopsy photograph;

4. The evidence is insufficient to sustain a conviction for murder; and

5. The trial court erred in denying the motion to suppress the photographic arrays.

Ex. 2 and 3. The Court of Special Appeals affirmed judgment by unreported opinion filed on January 22, 2009. Ex. 3. Sturgis did not request further review of this determination.

On December 17, 2009, Sturgis, proceeding pro se, filed for post-conviction relief in the Circuit Court for Baltimore City. Ex 1 and 4. By his petition, as litigated and construed by the Court,[2] Sturgis alleged: (A) the prosecutor committed misconduct by (1) arguing facts not in evidence in closing argument, (2) commenting on his personal feelings, and (3) not correcting the false testimony of a police officer witness; (B) the trial court erred in admitting photo array identifications; and (C) trial counsel was ineffective for (1) failing to object to a police officer's false testimony, (2) failing to present argument on the motion to suppress the photo array identifications, (3) failing to investigate and interview witnesses, including the victim, prior to

---

[2] Sturgis' Supplements to his Petition for Post-Conviction Relief were not considered by the Circuit Court because they were not filed or served on the Assistant State's Attorney. Ex. 7 n. 1, Ex 16 pp. 4, 88-89.

trial, and (4) failing to impeach the State's witnesses through effective cross-examination. Ex. 4 and 7.  The hearing on the Petition was held on June 24, 2010.  Ex. 16. On July 8, 2010, the Circuit Court denied post-conviction relief.  Ex. 1 and 7.

Sturgis filed an Application for Leave to Appeal the denial of post-conviction relief. The claims presented, as construed by Respondents were : (A) the prosecutor committed misconduct by (1) arguing facts not in evidence in closing argument, (2) commenting on his personal feelings, and (3) not correcting the false testimony of a police officer witness; (B) the trial court erred in admitting photo array identifications; and (C) trial counsel was ineffective for (1) failing to object to a police officer's false testimony, (2) failing to present proper argument on the motion to suppress the photo array identifications, (3) failing to investigate and interview witnesses prior to trial, and (4) failing to impeach the State's witnesses through effective cross-examination. Ex. 8.  In an unreported opinion filed on March 30, 2012, the Court of Special Appeals summarily denied Sturgis's Application for Leave to Appeal. Ex.  9.

Sturgis filed this Petition for federal habeas corpus relief on April 16, 2012, claiming: (A) the trial court erred by accepting inconsistent verdicts; (B) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing certain witness statements; (C) trial counsel was ineffective for (1) failing to investigate the case and (2) failing to uncover the evidence the State failed to disclose; (D) the evidence was insufficient to sustain his convictions; and (E) the cumulative effect of the identified errors warrants a new trial. Petition, ECF 1 pp. 5-6. Respondents initially filed a Limited Answer and moved to dismiss the Petition for lack of exhaustion of available state remedies as to certain claims. ECF 8.

Sturgis subsequently moved to withdraw his unexhausted claims from consideration, leaving two claims for review: 1) whether trial counsel was ineffective for failing to investigate

the case, and 2) whether the evidence was sufficient to sustain Petitioner's conviction. Petition, ECF 1 pp. 1 and 5-6, and Motion to Withdraw Unexhausted Claims, ECF 10. This Court then ordered Respondents to respond to the Petition as amended. The Response was filed on January 11, 2013. ECF 14. Sturgis filed a Reply on February 19, 2013. ECF 15.

## DISCUSSION

### A. Procedural Default

As a threshold matter, Sturgis claims are subject to the doctrine of procedural default ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971); *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91(1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F.Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show 1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314–16 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state

court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted).

### B. Standard of Review

If a claim for habeas relief has been fully presented to the state courts, *i.e.* is not procedurally defaulted, the claim is analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254 which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 2014 WL 1612424, * 4 (April 23, 2014, __U.S.__, 134 S. Ct 1697, quoting *Harrington v. Richter*, __U.S. __, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v.*

*Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (internal quotation marks and citation omitted).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where

state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379 (quoting 28 U .S.C. § 2254(e)(1)).

Further, to establish ineffective assistance of counsel, Strugis must show that: 1) counsel's performance was deficient, and 2) the performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id*. at 687 (internal quotation marks and citation omitted). Representation is deficient if it falls below "an objective standard of reasonableness." *Id*. at 688. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the " 'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' " *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir.2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.

Showing of prejudice, the second requirement of the *Strickland* standard, requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697.

### C. Petitioner's Claims

#### 1. Ineffective Assistance of Trial Counsel Claim.

Sturgis' first claim is that his trial attorney was ineffective for failing to investigate the case. In denying this claim, the state post-conviction court stated:

> Petitioner alleges that trial counsel was ineffective in that he failed to investigate fully the case or interview witnesses, including the victim. Petitioner's pro se Petition lists a number of potentially exculpatory facts which, it is alleged, trial counsel could have discovered had he conducted a thorough investigation. At the June 24, 2010, hearing on this Petition, evidence was presented that trial counsel failed to investigate or interview two potentially exculpatory eye witnesses. Trial counsel further failed to interview three of the State's witnesses prior to trial. Trial counsel admitted that he had spoken to no one. Trial counsel was deficient in his performance. It is important for counsel to interview witnesses, particularly possible exculpatory witnesses. The first prong of *Strickland* is satisfied.
>
> At trial, despite the inadequate preparation, trial counsel put on a vigorous defense of Petitioner, thoroughly cross-examining the State's

> witnesses and making strong arguments for acquittal. It appears from the transcript that the Defense theory of the case was that the State could not prove its case beyond a reasonable doubt. This Court is, therefore, unable to say that Petitioner suffered prejudice from trial counsel's deficient performance. The *Strickland* inquiry's second prong is not met.

Ex. 7 p. 6.

The post-conviction court's determination is supported by the record. The state presented two eyewitnesses at trial who identified Sturgis as the person who stabbed the victims. The surviving victim, Larry Reed, testified that he was unable to remember anything about the stabbing and did not know who had stabbed him. Sturgis does not allege in his Petition how counsel's failure to interview a victim who testified that he could not remember anything about the stabbing prejudiced the outcome of trial.

In regard to purported potential witnesses who were not interviewed, the Petition fails to allege what information these individuals would have provided had they been interviewed by counsel or how counsel's omissions in this regard prejudiced his defense. Petition, ECF No. 1, Pet. Reply ECF 15 p. 8. Sturgis's assertion that additional investigation would have aided his defense is unsubstantiated. Exhibit 16 at 27-34, 42-45, 77-78. None of these potential witnesses testified at trial and there was no evidence they would have meaningfully discussed the case with defense counsel or provided evidence favorable to the defense. In rejecting Sturgis' claims, the state court observed the defense strategy was to challenge the State's evidence of guilt. Ex. 8-7 p. 6; Ex 16 p 42; *see also* Ex. 16 p. 79-80. To this end, trial counsel questioned the State's two main witnesses during pretrial motions hearing (Ex 11), presented a vigorous defense at trial with thorough cross-examination, and made strong arguments for acquittal. Ex 11 and Ex 7 p. 6.

Given the exacting standard for federal habeas review, this Court determines that Sturgis has not shown the state court's decision resulted in a decision that was "contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Federal habeas corpus relief will be denied as to this claim.

## 2. Claim the Evidence was Insufficient to Sustain a Conviction for Murder

Sturgis' next claim is that the evidence was insufficient to sustain his murder conviction. On direct appeal, Sturgis averred that the evidence failed to "establish that he had an intent to kill or had reason to know what the results of his actions would be." Ex. 2 at 20. After the Court of Special Appeals of Maryland rejected this claim on its merits, Sturgis did not pursue further review; thus, this claim is procedurally defaulted.

In any event, even if this claim were to proceed to the merits, it does not provide grounds for award of habeas relief. In rejecting the claim, the Court of Special Appeals found the evidence adduced at trial sufficient to support Sturgis murder convictions, stating:

> …both Mr. Moye and Ms. Cash identified [Sturgis] as the assailant. Mr. Moye testified that [Sturgis] was "fussing" with the victim, left, and then came back and began fighting with the victim. Although Mr,. Moye did not see a knife, he did see appellant strike the victim's neck, and then saw blood "gush[ ] out." Ms. Cash testified that [Sturgis] was "fussing" with the victim on the phone. Shortly thereafter, [Sturgis] arrived at the location where the victim was, and was still "fussing." [Sturgis]. [Sturgis] left, returned later, and stabbed appellant.[3] [foot note added] Although Ms. Cash did not see a knife, she saw [Sturgis'] hand connect with the victim's neck, and she the saw blood "squirting out." Dr. King [the medical examiner] testified that the victim suffered multiple stab wounds, and that a stab wound to the victim's neck was fatal. The evidence that appellant argued with the victim, returned later, and stabbed him, is sufficient to show premeditation. [citation omitted]. The evidence that appellant struck the victim in the neck, and that the victim was killed by a stab wound to the neck is sufficient to show intent to kill. [citation omitted]. Thus, the evidence was sufficient to support appellant's convictions for first and second-degree murder.

Ex. 3 pp. 35-36.

---

[3] This appears to be a typographic error. Rasheed Stevenson was fatally stabbed. There is no evidence Sturgis stabbed himself.

On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original). A federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *see also Wilson v. Greene*, 155 F.3d 396, 405–06 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "considering] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). In summary, the federal court must determine only whether the trier of fact made a rational decision to convict. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

In light of the reasons expressed by the Court of Special Appeals decision, a rational trier of fact could have found Sturgis guilty of the offenses. Thus, the state court's rejection of the sufficiency of evidence claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, *i.e.*, *Wright v. West* and *Jackson v. Virginia*. The state court's decision is not based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings and there are no grounds presented for federal habeas relief. Thus, assuming arguendo this claim had been fully presented to the state courts, it would merit no federal habeas relief.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has failed to make a substantial showing that he was denied a constitutional right, and this Court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a Certificate of Appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the Court concludes the Petition provides no grounds for habeas corpus relief. A separate Order follows denying the Petition and a Certificate of Appealability.

June 23, 2014

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE